Matter of Erick RR. v Victoria SS. (2022 NY Slip Op 04209)

Matter of Erick RR. v Victoria SS.

2022 NY Slip Op 04209

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

533432
[*1]In the Matter of Erick RR., Appellant,
v
Victoria SS., Respondent.

Calendar Date:May 24, 2022

Before:Lynch, J.P., Clark, Pritzker, Ceresia and McShan, JJ.

Mack & Associates, PLLC, Albany (Barrett D. Mack of counsel), for appellant.
Pamela B. Bleiwas, Ithaca, attorney for the child.

McShan, J.
Appeal from an order of the Family Court of Broome County (Rosa, J.), entered April 28, 2021, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of the subject child (born in 2017). The mother resides in New York and the father resides in North Carolina, where he relocated shortly after the child's birth. Pursuant to a September 2018 order entered on consent, the parties shared joint legal custody of the child with the mother having primary residential custody. The custody agreement permitted the father to petition to modify the custodial arrangement without showing a change in circumstances if, after four custodial periods in New York, the parties were unable to agree to custodial periods in North Carolina. After exercising his fourth custodial period, the father commenced this proceeding in September 2019 seeking to modify the September 2018 order by awarding him primary residential custody of the child or a liberal schedule of parenting time. Following a fact-finding hearing, Family Court, among other things, continued the parties' joint legal custody arrangement, with the mother continuing to have primary residential custody of the child and the father receiving certain periods of parenting time during the child's school breaks, including two consecutive weeks in either July or August each year, and reasonable parenting time when the father visits New York. The father appeals.
Although a party seeking to modify a prior order of custody must generally first demonstrate a change in circumstances since that order (see Matter of Anthony JJ. v Joanna KK., 182 AD3d 743, 744 [2020]; Matter of Thomas KK. v Anne JJ., 176 AD3d 1354, 1355 [2019]), "[t]his requirement may . . . be circumvented when the prior custody order provides that the satisfaction of certain conditions will constitute the necessary change in circumstances" (Matter of Austin ZZ. v Aimee A., 191 AD3d 1134, 1135 [2021]; see Matter of Anthony F. v Christy G., 180 AD3d 1197, 1197-1198 [2020]). As the parties failed to come to an agreement pertaining to custodial periods in North Carolina, the condition in the September 2018 order was clearly satisfied (see Matter of Curtis D. v Samantha E., 182 AD3d 655, 656 [2020]). Accordingly, the remaining issues before us are whether Family Court's determination to maintain the mother's residential custody and award certain parenting time to the father was in the best interests of the child (see Matter of David VV. v Alison YY., 203 AD3d 1534, 1535 [2022], lv denied ___ NY3d ___ [June 14, 2022]).
In determining what custodial arrangement would be in the best interests of the child, Family Court must necessarily consider several factors, including "the quality of the home environments of each parent, the need for stability in the child's [*2]life, the degree to which each parent has complied with the existing custodial arrangement and whether he or she will promote a positive relationship between the child and the other parent, as well as each parent's past performance and ability to provide for the child's physical, emotional and intellectual well-being" (Matter of Charity K. v Sultani L., 202 AD3d 1346, 1347 [2022]; see Matter of Jamie UU. v Dametrius VV., 196 AD3d 759, 760-761 [2021]). Further, because "the practical effect of granting the father's request for modification of custody would be the relocation of the child, relocation must be considered" as part of the best interests analysis (Matter of Jelani PP. v Melissa QQ., 193 AD3d 1299, 1299-1300 [2021] [internal quotations marks, brackets and citations omitted]; see Matter of Casarotti v Casarotti, 107 AD3d 1336, 1340 [2013], lv denied 22 NY3d 852 [2013]). "As Family Court was in a superior position to observe and assess witness testimony and demeanor during the fact-finding hearing, its credibility assessments and factual findings are accorded great deference, and its custodial determination will not be disturbed so long as it is supported by a sound and substantial basis in the record" (Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1414 [2021] [citations omitted]; see Matter of Devin W. v Jessica X., 204 AD3d 1111, 1112 [2022]).
The evidence from the fact-finding hearing reveals that both parents love the child and are committed to promoting her best interests. Notwithstanding their desires to properly care for the child, the overarching concern that is apparent from the proceedings is the parties' acrimonious relationship that extends back to the time of the mother's pregnancy. Indeed, the record demonstrates that the mother continues to harbor animosity toward the father for relocating shortly after the child's birth and the father is generally resentful of the mother and has resisted any input from her concerning how to parent the child. Further, the records of communication between the parties both before and after the child's birth evidence the hostility that they maintain toward one another. To this end, we join with Family Court in cautioning the parties to make efforts to improve their relationship for the sake of the child.
Nonetheless, despite the ongoing animosity that pervades their own relationship, the parties agreed that their recent communication had improved. Moreover, while the parties had several disagreements over parenting time, the mother had agreed to several visits in North Carolina and in New York and had also made efforts to facilitate regular video calls between the child and the father. Although communication between the parties has been difficult, the record contains sufficient evidence that the mother understood the importance of involving the father in the child's life.
Family Court also noted that the child has lived with the mother since birth and enjoys a strong bond with her[*3]. The mother has also been the sole provider for the child, with minimal financial support from the father. At the time of the hearing, the mother had stable housing and a strong support system in place for the child, which included the maternal grandmother and the child's maternal uncle, who both assisted in caring for the child while the mother worked. To this point, while the record reveals concerns about the mother's past living arrangements and a recent alcohol-related arrest, there was no evidence that the mother had provided inadequate care or that any harm had befallen the child, who by all accounts was well-adjusted, healthy and happy. Altogether, Family Court's conclusion that the best interests of the child are served by maintaining stability through residential custody with the mother as opposed to relocating the child to North Carolina with the father is supported by a sound and substantial basis, and the record does not warrant this Court disturbing that determination (see Matter of Christina E. v Clifford F., 200 AD3d 1111, 1113-1114 [2021]; Matter of Lonny C. v Elizabeth C., 186 AD3d 950, 954 [2020]; Matter of Jacob WW. v Joy XX., 180 AD3d 1154, 1158 [2020]).[FN1]
However, turning to the father's contentions concerning parenting time, while we generally defer to Family Court's discretion on such matters, we note our broad authority to make informed modifications of such provisions in a Family Court order (see Matter of O'Dale UU. v Lisa UU., 140 AD3d 1249, 1252 [2016]; Bowman v Engelhart, 112 AD3d 1187, 1189 [2013]). In considering such relief, we are guided by the well-established presumption that "[t]he best interests of the child[] generally lie with a healthy, meaningful relationship with both parents" (Matter of Tina RR. v Dennis RR., 143 AD3d 1195, 1197 [2016]). As is the case in this matter, if no harm to the child would result from providing parenting time, "Family Court is required to structure a schedule which results in frequent and regular access by the noncustodial parent" (Matter of Staff v Gelunas, 143 AD3d 1077, 1078 [2016] [internal quotation marks and citations omitted]; see Matter of Adam E. v Heather F., 151 AD3d 1212, 1214 [2017]). Despite relocating shortly after the child's birth, the father has made efforts to form a bond with the child, and it is clear that he desires a significant role in the child's life despite the physical distance between them. The father testified that he has limited vacation time in his current employment, which he often must use in order to travel to and from this state to pick up the child for his parenting time. As such, during the child's visits in North Carolina, he must often work in order to preserve that vacation time. Moreover, the availability of parenting time in New York fails to alleviate this concern, since the father's limitation on vacation time would still constrain his ability to take advantage of such parenting time on a frequent basis. We recognize the attorney [*4]for the child's concerns pertaining to constant shuttling of the child back and forth from this state to North Carolina, which would be impractical. Nonetheless, the record reveals that the father desired an equal split in parenting time and, while an arrangement of that nature and frequency is clearly unfeasible, we find that a lengthier period of parenting time during the summer — in addition to his other parenting time — is appropriate in order to ensure that the father has meaningful access to the child during a time that would cause the least disruption to the child's current schedule (see Matter of Jessica HH. v Sean HH., 196 AD3d 750, 755-756 [2021]; see also Matter of Zachary C. v Janaye D., 199 AD3d 1267, 1269 [2021]). We therefore modify the judgment to provide the father with four weeks of parenting time in North Carolina during the child's summer recess from school, which may be taken consecutively or as the parties may otherwise agree.
Lynch, J.P., Clark, Pritzker and Ceresia, JJ., concur.
ORDERED that the order is modified, on the law and the facts, without costs, by reversing so much thereof as awarded petitioner parenting time for two consecutive weeks in either July or August each year; petitioner is granted additional parenting time as set forth in this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: We further note that, "although not determinative, the court's determination is in accord with the position of the [a]ttorney for the [c]hild" (Matter of Holly F. v Daniel G., 193 AD3d 1292, 1294 [2021], lvs denied 37 NY3d 904 [2021]).